## HOUGHTON v. TEXAS STATE LIFE INS. CO. et al.

No. 2070.

District Court, N. D. Texas, Dallas Division.

Oct. 1, 1946.

Robert J. Young, Jr., U. S. Dist. Atty., of Fort Worth, Tex., and Clyde G. Hood and William Cantrell, Jr., Asst. U. S. Dist. Attys., both of Dallas, Tex., for plaintiff.

Carlton & Street, of Dallas, Tex., for defendants.

ATWELL, District Judge.

The Texas State Life Insurance Company is a corporation existing under the laws of the State of Texas, and the other fifteen defendants are directors of the same.

The suit is brought by the United States District Attorney at the request of the plaintiff, as required by subsection (e) of Sec. 308, Title 50 Appendix, U.S.C.A.

It is alleged that the plaintiff, on April 23, 1942, was an employee of the corporation, as one of its Directors, and as its President, at an annual salary of $4,800. That on April 9, 1942, he was ordered to, and did enter the military service of the United States on April 23, 1942. That he continued in such service from that date until December 15, 1945, when he was issued a certificate of completion of duty.

That on March 11, 1946, he made application to be restored to the position which he had held with the defendant corporation, or, to a position of like seniority and pay. That he is able and qualified to perform the duties thereof. That the defendants have failed and refused to do so.

He prays for an order of restoration and that he have judgment for a sum equivalent to the loss of wages and benefits suffered.

The defendants contend that the position which he held was temporary. That it was elective from year to year as provided by the laws of Texas, and as provided by the by-laws of the defendant corporation. That it is impossible and unreasonable to restore him to the position, because during his absence a complete re-organization was made and a new charter has been granted. That its capital stock was originally $30,000; that it is now $100,000 and that a new and different type of policy is offered. That the conduct of its business is entirely different, and that such change in business form was accomplished over the protest of the plaintiff. That while the plaintiff was connected with the defendant that the corporation was in constant serious controversies with the Board of Insurance Commissioners of Texas which caused the defendant serious losses, and that if he were permitted to become President again, the same controversies would occur and would result in serious loss to the stockholders, and in the destruction of the defendant's company. These last reasons are amplified by giving the different plans pursued by the defendant at the present time and those to which the plaintiff was committed.

That the laws of Texas provide that its stockholders annually elect a Board of Directors who, in turn, elect its officers, among which is its President. That on April 15, 1946, said Board refused to re-elect the plaintiff. That the plaintiff is not qualified nor able to perform the duties of President, because the defendant's business is not in accord with the ideas of the plaintiff and he does not agree with its present method of operation. That it is a growing concern, daily accumulating profits for its stockholders. That the plaintiff is not a director of said corporation and is, therefore, not qualified to be chosen as President.

It is conceded in open court that a tender of one year's salary was made to the plaintiff, which he refused.

The testimony shows that after the plaintiff was called to service, the Vice-President acted as President until the next meeting of the stockholders which was in March, 1943, and thereafter the Board of Directors, which was chosen at that meeting, elected Smith as President.

It also shows that there had been controversies between the plaintiff when he was President, with the Insurance Commissioner of Texas, over policies which he was pursuing and that there were serious differences between him and the stockholders, and the Board of Directors. The fact remains, however, that he continued to serve and was in the position of President at the time he entered the military service.

■ There are very few applicable decisions to the particular questions involved here. The statutory provisions will be found in 50 U.S.C.A. Appendix § 308(b), § 357, § 403, and § 1472. Kay v. General Cable Corp., 3 Cir., 144 F.2d 653, holds that the benefits under the Selective Service Act do not extend to purely temporary positions, and the Act, itself, provides that when an employer's circumstances have changed to an extent where it is impossible, or, unreasonable, to restore the veteran to his former position, or one of like status, such restoration need not be made. This exception is not intended to provide for cases where the company enjoys a greater efficiency to continue in its employment one

who has taken the place of the veteran, was held in Kay v. General Cable Corp., supra.

 A bona fide attempt must be made to secure other work to mitigate the damages.

If the court decides a veteran is entitled to be restored, it may also direct and compensate such veteran for such loss of wages or benefits. Hall v. Union Light, D.C., 53 F.Supp. 817. Anderson v. Schouweiler, D.C., 63 F.Supp. 802, allows evidence of mismanagement by the soldier while he was employed but such evidence must be limited to such questions of qualification as were raised against him at that time. Nor can there be a reduction in seniority in order that a serviceman may be re-employed, was held in Droste v. Nash-Kelvinator Corp., D.C., 64 F.Supp. 716.

The two cases which the court has been able to find which more nearly bear upon the issue here, are Dacey v. Trust Funds, D.C., 66 F.Supp. 321, 323, wherein, without the citation of authority, it is simply stated that, "His right to be a director or a vice president of the defendant corporation is not one which this Court has the power to decree for that is something which is entirely in the hands of the stockholders." The other is Fishgold v. Sullivan Drydock & Repair Corp., 66 S.Ct. 1105, which determines that the Act gives no authority to supersede a contract with reference to seniority so that a serviceman could insist upon ignoring such a contract between a corporation and its employees.

Leaving out of consideration the very serious contention, supported by the testimony, that the plaintiff was entirely out of harmony with the desires of the Directors and stockholders of his company, at the time he left that work to enter the armed services, and going at once to the larger, and, what seems to me, the easier question, to-wit, the power of the court to require stockholders and a Board of Directors to act in accordance with its judgment, rather than in accordance with their judgment and the by-laws of the corporation, and the laws of the State of Texas, it must be held that no such authority exists.

The position in the instant case to which the plaintiff seeks restoration, is not that of simple employment. It is an elective position. A position which must be filled through such election by the requirements of the provisions of the charter of the corporation and the insurance laws of the state.

We tread softly here. There must be no error as to what is held. There is no refusal to enforce this highly salutary Selective Service provision. It was passed for the benefit of our Armed Forces who were making great sacrifices and who were not only defending themselves and their own property, but were, likewise, performing a similar service for the country at large. The Act applies to the humblest employee, and to the most exalted employee who come under its terms which must be liberally construed.

But even that sort of construction leads into an impossible situation here, a situation, which, under the Act, is "unreasonable."

Judgment must go for the defendant.