Sam William **FORTENBERRY**, Plaintiff,

v.

**OWEN BROTHERS PACKING COM-PANY**, Defendant.

Civ. A. No. 1279.

United States District Court

S. D. Mississippi, E. D.

Jan. 25, 1966.

Charles Donahue, Sol., Beverley R. Worrell, Regional Atty., U. S. Dept. of Labor, Atlanta, Ga., Norman H. Winston, Assoc. Regional Atty., Roger Martinson, Daniel M. Williams, Jr., Attys., U. S. Dept. of Labor, Birmingham, Ala., Robert E. Hauberg, U. S. Atty., Jackson, Miss., for plaintiff.

Thomas Y. Minniece, Ethridge, Minniece, Bourdeaux & Jones, Meridian, Miss., for defendant.

DAN M. RUSSELL, Jr., District Judge.

Plaintiff, Sam William Fortenberry, a resident of Philadelphia, Mississippi, filed this action against Owen Brothers Packing Co., Inc., meat packers of Meridian, Mississippi, seeking certain benefits allegedly due him under the provisions of Section 459 of the Universal Military Training and Service Act, 50 (App.) U.S.C.A. At the trial had on December 13, 1965, the evidence showed that plaintiff no longer sought reemployment rights, but based his action on a claim for damages by reason of the refusal of his employer, defendant named above, to restore him to his job following plaintiff's rejection for military service.

Plaintiff began his employment on April 17, 1963, as a day laborer in the sausage department. He was paid by the week. On June 10, 1963, Local Board No. 54, Selective Service System, Philadelphia, Mississippi, ordered plaintiff to report on July 8, 1963 for induction into the Armed Forces of the United States. Plaintiff claimed that he so notified Mr. McFadden, his foreman, and Mr. Mollett, the plant manager. Both supervisory employees denied this notice. On July 3, 1963, plaintiff left his employment, saying it was his last day. His time card subsequently showed him marked "off payroll" on this day. July 4th being a holiday, plaintiff returned to the plant the following day and picked up his pay. Again both Mr. McFadden and Mr. Mollett denied that plaintiff at any time gave any reason for leaving his job. On July 8, 1963, plaintiff reported to his draft board which forwarded him to the induction station at Jackson, Mississippi. On July 9, 1963 he was notified of his rejection for military service; he returned to Philadelphia that night, and on the following morning, July 10, 1963, reported at defendant's plant in Meridian, where he was told that he was off the payroll. Plaintiff thereafter contacted the Regional Director of the Bureau of Veterans' Reemployment Rights, U. S.

Department of Labor in Atlanta, Georgia, who, under date of August 6, 1963, wrote to defendant concerning plaintiff's claim. Defendant responded on August 13, 1963, saying that plaintiff had resigned on July 3, 1963, and had only mentioned on July 10, 1963, for the first time, anything about his military rejection. Plaintiff drew eight weeks' unemployment compensation, following which he received a total of $1561.42 in wages from other employment up to June 4, 1964, when, for reasons not related to his employment, he left Meridian to return to Philadelphia. Except for the above mentioned exchange of letters, plaintiff admitted that he had no further contact with defendant, and after securing other employment on September 13, 1963, did not go back to defendant's plant because he "had a job and did not need the old one."

The parties agreed that had plaintiff remained employed by defendant, he would have made $3275.00 from July 10, 1963 up to June 4, 1964, or $1713.58 more than he received from other employment, exclusive of unemployment compensation.

Defendant contends that plaintiff waived his reemployment rights by failing to give notice of his anticipated military induction as his reason for leaving his job, and that after reporting back on July 10, 1963, he should have returned with some evidence of his rejection as the supervisory employees testified he was instructed to do.

 As to the necessity of prior notice, none is required by Sec. 9(g) (5) of the Act, 50 App.U.S.C., Sec. 459. The test is whether or not he was required to leave his employment to report for the purpose of being inducted or determining by a preinduction examination his physical fitness to enter the armed forces. He obviously was so required by reason of his order to report on July 8, 1963. See Anglin v. Chesapeake & O. Ry. Co., D.C., 77 F.Supp. 359. This section of the act further provides that upon his rejection, "such employee shall be permitted to re-turn to his position in accordance with the provisions of paragraph (4) of this subsection." Paragraph (4) provides that he, the employee, "shall report for work at the beginning of his next regularly scheduled working period after expiration of the last calendar day necessary to travel from the place of training to the place of employment * * *."

 As plaintiff reported for work on the very next day following his rejection, I conclude that he should have been restored to his former job. Concededly, it perhaps would have prevented any misunderstanding had plaintiff returned to work with some proof of his rejection. At the same time the employer, following its receipt of the communication from the Bureau of Veterans' Reemployment Rights could have responded in a manner favorable to the employee instead of insisting on a notice which was not required. The courts have historically given liberal construction in enforcing rights to reemployment. Cavanaugh v. Pinkerton's Nat. Detective Agency, D.C., 198 F.Supp. 50; McNichols v. Southern Ry. Co., D.C., 194 F.Supp. 148.

 Inasmuch as plaintiff does not seek restoration of his employment rights, there remains to be determined how much damages he is entitled to. The general rule is that compensation should begin when application for reemployment is made. See Thompson v. Chesapeake & O. Ry. Co., D.C., 76 F.Supp. 304. However, where there have been long delays in instituting suit, the courts have not allowed compensation prior thereto. Thompson v. Chesapeake & O. Ry. Co., supra, and Anglin v. Chesapeake & O. Ry. Co., supra. In this case suit was not instituted until February 1965, although the cause of action arose following plaintiff's application of July 10, 1963. It is not shown in any way that defendant was responsible for this delay. In Kay v. General Cable Corporation, D.C., 59 F. Supp. 358, 360, the court said: "The Act provides a definite course of procedure whereby the discharged veteran might immediately have recourse to the District

**608**

Court upon the refusal of an employer to restore him to his former position. The Act contemplates that such action shall be taken immediately upon an employer's refusal to restore and specifically instructs that 'The court shall order a speedy hearing in any such case and shall advance it on the calendar.' It follows that if proceedings are not instituted in the District Court until some six months following the veteran's discharge from service and the employer's refusal to restore him to his former position, notwithstanding that negotiations between the employer and the veteran have been held in the interim, it would be beyond the scope of the Act to compel the employer to compensate for such extended period." As in the *Thompson* and *Anglin* cases, supra, the *Kay* case allowed compensation only from the date suit was filed. In the instant case, the record is silent as to any damages to plaintiff following the institution of suit in February, 1965, plaintiff apparently relying on a claim for loss of wages from July 10, 1963, to June 4, 1964, when he voluntarily left the Meridian area. In view of the above holdings, I cannot go this far.

█ Having found that plaintiff should have been reemployed by defendant on July 10, 1963, it seems to me that his compensation should be limited from this date until the end of his first pay period at other employment, established by the evidence to be September 26, 1963, as, after receiving other employment, he expressed no interest in his former job with the defendant.

I therefore hold that plaintiff is entitled to compensation at such amount as would have been his regular weekly pay, beginning at the end of the first weekly pay period following July 10, 1963, up to and including September 26, 1963, the first date on which he received wages from other employment, less the total unemployment compensation he received during this period.

Let the parties make the computation as to damages and include the amount in an appropriate order.