PLOMB TOOL CO. v. SANGER.

No. 12873.

United States Court of Appeals
Ninth Circuit.

Dec. 13, 1951.

Rehearing Denied Jan. 4, 1952.

O'Melveny & Myers, Sidney H. Wall, and Clyde E. Tritt, all of Los Angeles, Cal., for appellant.

Kenny & Morris and Robert W. Kenny, all of Los Angeles, Cal. (Arvey, Hodes & Mantynbrand, Chicago, Ill., of counsel), for appellee.

Holmes Baldridge, Asst. Atty. Gen., Ernest A. Tolin, U. S. Atty., Los Angeles, Cal., William S. Tyson, Solicitor of Labor, Harry M. Leet, Atty., Dept. of Labor, Philip W. Yager, Atty., Dept. of Justice, and Felice E. Darkow, Atty., Dept. of Labor, all of Washington, D. C., for United States as amici curiæ.

Before MATHEWS, STEPHENS and BONE, Circuit Judges.

BONE, Circuit Judge.

Appellee Sanger sued the Plomb Tool Company, a corporation, to obtain reinstatement to a position held by him with defendant corporation and for compensation for loss of benefits. The action was brought under § 7 of the Service Extension Act of 1941, and § 8 of the Selective Training and Service Act of 1940, as amended, both of which are set forth in the margin.[1] Judgment was entered for appellee in the sum of $79,475.05 with interest at the rate of 7% per annum from January 1, 1947, together with reinstatement in the position he held prior to his entry into the military service.

Appellee is a World War II veteran who voluntarily entered the armed services in November, 1942, and was honorably discharged therefrom on December 29, 1945. For nine years prior to his enlistment, he sold appellant's tool products on a commission basis as a manufacturer's representa-

1. § 8 Selective Training and Service Act of 1940, 50 U.S.C.A.Appendix, § 308, now 50 U.S.C.A.Appendix, § 459:

"(a) Any person inducted into the land or naval forces under this Act for training and service, who, in the judgment of those in authority over him, satisfactorily completes his period of training and service * * * shall be entitled to a certificate to that effect upon the completion of such period of training and service. * * *

"(b) In the case of any such person who, in order to perform such training and service, has left or leaves a position, other than a temporary position, in the employ of any employer and who (1) receives such certificate, (2) is still qualified to perform the duties of such position, and (3) makes application for reemployment within ninety days after he is relieved from such training and service * * *

"(B) If such position was in the employ of a private employer, such employer shall restore such person to such position or to a position of like seniority, status, and pay unless the employer's circumstances have so changed as to make it impossible or unreasonable to do so;

*     *     *     *     *

"(e) In case any private employer fails or refuses to comply with the provisions of subsection (b) * * * the district court of the United States for the district in which such private employer maintains a place of business shall have power, upon the filing of a motion, petition, or other appropriate pleading by the person entitled to the benefits of such provisions, to specifically require such employer to comply with such provisions, and, as an incident thereto, to compensate such person for any loss of wages or benefits suffered by reason of such employer's unlawful action. * *"

§ 7 Service Extension Act of 1941, 50 U.S.C.A. Appendix, § 357, now 50 U.S.C.A. Appendix, § 459:

"Any person who, subsequent to May 1, 1940, and prior to the termination of the authority conferred by section 2 of this joint resolution, shall have entered upon active military or naval service in the land or naval forces of the United States shall be entitled to all the reemployment benefits of section 8 of the Selective Training and Service Act of 1940 to the same extent as in the case of persons inducted under said Act: Provided, That the provisions of section 8(b) (A) of said Act shall be applicable to any such person without regard to whether the position which he held shall have been covered into the classified civil service during the period of his military or naval service."

tive in a specified territory known as the "Kansas City Territory," comprising the states of Kansas, Iowa, Minnesota, Missouri and portions of Nebraska, South Dakota and Illinois. In addition, appellee also sold various products of six other manufacturers during the period pertinent to our inquiry.

In January, 1946 (within ninety days after his release from service) appellee applied to appellant for reinstatement in his old position, but this application was refused on the grounds and for the reason that appellant regarded him as an independent contractor, hence there existed no statutory right to renewal of his pre-war status. Appellant did, however, offer appellee a position as a salesman in the Kansas City Territory, as it had been reconstituted during the war, provided he represent appellant exclusively. This offer was declined by appellee.

The record reveals that in March, 1946, appellee consulted the Selective Service System regarding his claim for reinstatement, and that after continued correspondence between the latter and appellant, the claim was transferred to the United States Attorney in Chicago, Illinois. In February, 1948, the file concerning appellee's claim was turned over to him, no suit having been initiated, and he (appellee) put the matter in the hands of a firm of Chicago attorneys. When efforts by this firm to secure reinstatement of appellee failed, suit was filed on behalf of appellee against appellant in the United States District Court for the Northern District of Illinois on July 22, 1949. This action was dismissed without prejudice for lack of jurisdiction over appellant on September 20, 1949. The instant action was filed two days later in the lower court.

The trial court formally found that appellee sold merchandise for appellant in

a specified territory under a written contract[2] which was terminable upon thirty days written notice by either party; that appellee was paid on a commission basis; that he solicited orders from whatever customers he selected, and that he determined his own working hours, sales routes, and itineraries, using whatever selling techniques he desired. Appellee was permitted to, and did, represent other manufacturers, and for the two year period immediately prior to his entry into the armed services, some forty-three per cent of his gross income was derived from sales activities on behalf of other manufacturers. He paid his own expenses, and selected and paid an assistant with his own monies and this assistant acted pursuant to his (appellee's) instructions. Appellee was not required to meet sales quotas, nor was he furnished an office by the appellant corporation. No deductions were taken from his commissions on account of Social Security taxes, Old Age Benefits, or Unemployment Insurance.

The written contract of the parties above referred to expressly provided that no employer-employee relationship was established by this writing, and the supplemental agreement of December 8, 1941, extending the previous written contract for another year, referred to it as "the contract * * * under which you sell our tools as an independent contractor. * *"

Appellant contends that there are five basic questions presented, an affirmative answer to any of which necessitates reversal of the district court's judgment. They are: (1) Whether appellee's claims for reinstatement are barred by a statute of limitations; (2) Whether such claims are barred by laches and delay on his part; (3) Whether appellee's pre-war status with the appellant was that of an independent contractor; (4) Whether appellant's cir-

2. A stipulation of facts entered into by the parties (which the court adopted as a finding of fact) shows that although the appellee had sold the products of appellant in the Kansas City Territory for approximately 9 years prior to November, 1942, it was not until January 18, 1941 that the terms of their arrangement were reduced to a written

contract. On December 8, 1941, appellant wrote to appellee proposing that the previous written contract "under which you sell our tools as an independent contractor" be extended for a further period of one year. Appellee accepted this proposal in writing on December 16, 1941.

cumstances had so changed by the time appellee made application for reinstatement as to make it unreasonable to require appellant to restore appellee to his prewar status; and (5) Whether appellant fully satisfied any obligation it may have had to appellee by offering him a "position of like seniority, status, and pay."

In view of our answer to question (3), above, it is unnecessary to consider the other suggested questions upon which appellant's assignment of errors is predicated. In its Conclusions of Law, No. I, the district court states: "Plaintiff left a position in the employ of the defendant within the meaning of The Selective Service Act of 1940, as amended (50 U.S.C.App. Sec. 308b) and (that) plaintiff's pre-war status with the defendant was not that of an independent contractor." In our view the findings do not support such a conclusion.

The district court recognized that an independent contractor does not come within the protection of the Act. See Kay v. General Cable Corporation, 3 Cir., 144 F.2d 653, 654; Brown v. Luster, 9 Cir., 165 F.2d 181, 184. In the Luster case, supra, which was an action for reinstatement of a veteran under the Act here in question, we said: "An independent contractor * * * is more or less in the same category as a person in business for himself who because of his ability to produce without the control or direction of another is not subjected to the usual and common restrictions and regulations applicable to the ordinary employee. * * * The question of whether one is an employee or an independent contractor has been considered in many cases, and for the purpose of determining it various tests have been applied. However, in each case all the facts must be considered together and thereafter resolved as of the time the relationship was entered into. * * * Whether we are dealing with cases involving the responsibility of a person for the acts of those under his control or with remedial or regulatory statutes, the basic distinctions between an employee and an independent contractor are the same.

"In United States v. Silk, heard together with Harrison, Collector of Internal Revenue v. Greyvan Lines, Inc., 331 U.S. 704, 67 S.Ct. 1463, 91 L.Ed. 1757, the Supreme Court laid down certain tests for this distinction. In Henry Broderick, Inc., v. Clark Squire, opinion filed October 10, 1947, 9 Cir., 163 F.2d 980, 982 * * * we * * * said '* * * These tests included degree of control, opportunities for profit or loss, investment in facilities, permanency of relation and skill required in the claimed independent operation.'

"We might add to this non-exhaustive list of tests: lack of control or supervision, the independent contractor representing the will of an employer only as to the result to be accomplished, freedom to determine one's own hours of work and to engage in other professional activity, and 'depend[ency] upon [one's] own initiative, judgment and energy for * * * success', (Silk case supra [331 U.S. 704, 67 S.Ct. 1469, 91 L.Ed. 1757])—all of which factors were enjoyed by appellant."

When the facts of the instant case, as stated in the district court's Findings of Fact, and in the (adopted) stipulations of the parties, are set off against the criteria set forth hereinbefore, and as suggested by a long line of cases,[3] they call for the conclusion that appellee was not an employee of appellant, but rather an independent contractor. Appellant looked to appellee for a result, and in reaching it, appellee was wholly free to exercise his own independent discretion. The facts of this case fail to reveal any of the supervision, control, and direction that attaches to the employer-employee relationship.

██ Appellee lays much emphasis upon the purpose which he asserts Congress intended to accomplish in enacting the provisions of the Acts here involved. That

3. Chicago, Rock Island & Pacific Railway Company v. Bond, Administrator of Turner, 240 U.S. 449, 36 S.Ct. 403, 60 L.Ed. 735; Casement v. Brown, 148 U.S. 615, 13 S.Ct. 672, 37 L.Ed. 582; Glenn, Collector of Internal Revenue v. Beard, 6 Cir., 141 F.2d 376, 377; Waggaman v. General Finance Co. of Philadelphia, Pa. Inc., and Warfield v. General Finance Co. of Philadelphia, Pa. Inc., 3 Cir., 116 F.2d 254, 258.

these statutes are to be liberally construed in favor of a veteran may be assumed, but we are persuaded that Congress did not intend, by these statutes, to impose upon one person a liabilty where no liability existed prior to service in the armed services. Brown v. Luster, supra, cf. Fishgold v. Sullivan Drydock & Repair Corp., 328 U.S. 275, 285, 66 S.Ct. 1105, 90 L.Ed. 1230. We recognize that there are certain fringe relationships which do not fit into either the independent contractor category or that of a "position in the employ of a private employer." Were we here confronted with such a fringe situation, it might then be incumbent upon us to hold this veteran to be within the protective scope of the Act. Such is not the case here. Since we conclude that Sanger is and was an independent contractor, he is in no position to benefit by the Act.

Appellee relies on King v. Southwestern Greyhound, 10 Cir., 169 F.2d 497, certiorari denied 335 U.S. 891, 69 S.Ct. 245, 93 L.Ed. 428, in support of the proposition that although the contract of the litigants designates the status as one of independent contractorship, it is the effect of the contract that is controlling, rather than what the parties choose to call themselves. Yet, in the same breath, it is also stressed as significant that appellant referred to this veteran as a "salesman," "district manager," and furnished him with business cards bearing the company name. That appellee's first contention is, to some extent, a rebuttal of his second, and vice versa, is apparent. But even aside from such inconsistency, we think it sufficient to say that not only did the parties choose to use the term independent contractor in their written agreement, but the legal effect of the relationship, as determined from the facts as found by the district court, accents the legal accuracy of their chosen phraseology.

■ Nor is Rule 52(a), Federal Rules Civil Procedure, 28 U.S.C.A., applicable to appellant's contention that Sanger was an independent contractor, for it is not the findings of the district court that appellant assails, but rather its *conclusion* drawn

therefrom. We have long recognized the advantages enjoyed by the trial judge in evaluating testimony and arriving at the facts flowing from that court's opportunity to observe the witnesses, but here the facts are not in dispute. It is rather the conclusion of the district court with which we have parted company.

For the reasons we have indicated the judgment of the lower court is reversed.